WMN/DAS:KKO/CK
F. #2009R00637

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MOUSA KHOULI,
    also known as "Morris
    Khouli,"
SALEM ALSHDAIFAT,
JOSEPH A. LEWIS II and
AYMAN RAMADAN,

        Defendants.

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
545, 982(a)(1),
982(a)(2)(B),
1001(a)(2), 1956(h), 2
and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

INTRODUCTION

       At all times relevant to this Indictment, unless otherwise indicated:

I.    Importation Procedures

       1.    Shipments of goods arriving at any port of the United States had to be granted "entry," or clearance, by the Department of Homeland Security, Customs and Border Protection ("Customs"), prior to the goods being allowed to move beyond the port. The importer of a shipment of goods could obtain such clearance through the use of a "Customs Broker." A Customs Broker was an individual or company licensed by Customs to file entry documents for commercial shipments on behalf of importers. Based on information provided by the importers, Customs Brokers

2

generated entry packages describing the shipments. Customs Brokers provided these entry packages to Customs in order to obtain clearance for goods to enter the United States.

2.  Statutes and regulations governing the importation process, including but not limited to Title 18, United States Code, Sections 541 and 542, required persons bringing merchandise into the United States to provide truthful and complete statements to Customs about the merchandise.

3.  Some merchandise could enter the United States via an "informal entry." Informal entries were permitted for goods meeting certain criteria, including having a value of $2,000 or less. No Customs Broker or entry forms were required for an informal entry. However, the importer was required to accurately list the contents of the package, country of origin, and value of the contents on a shipping label. Customers of commercial carriers, such as express mail services, commonly imported merchandise via informal entry procedures.

4.  Due to the large volume of cargo that arrived at U.S. ports each day, Customs sometimes cleared shipments without manually inspecting the contents of the shipments. In such instances, Customs relied entirely on information provided in a Customs Broker's entry package or, for an informal entry, a shipping label. When Customs cleared a shipment based on documents provided by a Customs Broker, Customs personnel

informed the Customs Broker that the shipment had been cleared. Once cleared, a shipment could be removed from the port and delivered to the importer or a consignee. When Customs cleared an informal entry shipment, the carrier for the package resumed possession of the package for delivery to the addressee.

II. The Defendants

5. Defendant MOUSA KHOULI, also known as "Morris Khouli," was an antiquities dealer who operated a business called Windsor Antiquities ("Windsor"). KHOULI purchased antiquities located abroad and sold such merchandise through Windsor's gallery in New York, New York, and through Internet websites.

6. Defendant SALEM ALSHDAIFAT was an antiquities dealer who operated a business called Holyland Numismatics ("Holyland"), which maintained a mailing address in West Bloomfield, Michigan. He sold ancient coins and other antiquities through Holyland's Internet websites.

7. Defendant JOSEPH A. LEWIS II was a collector of Egyptian antiquities.

8. Defendant AYMAN RAMADAN was an antiquities dealer who operated a company called Nafertiti Eastern Sculptures Trading ("NEST") in Dubai, United Arab Emirates ("UAE").

III. The Smuggling Scheme

9. From approximately October 2008 until approximately November 2009, the defendants, together with

4

others, engaged in a scheme to smuggle Egyptian antiquities into the United States.

10. As part of the smuggling scheme, LEWIS purchased a Greco-Roman style Egyptian sarcophagus, a nesting set of three Egyptian sarcophagi, a set of Egyptian boats and Egyptian limestone figures (collectively, "Egyptian antiquities") from KHOULI, who purchased those items from ALSHDAIFAT and RAMADAN.

11. As a further part of the smuggling scheme, KHOULI and LEWIS wired funds from the United States to foreign bank accounts.

12. As a further part of the smuggling scheme, KHOULI provided LEWIS with false provenances which stated that the Egyptian antiquities were part of a collection assembled by KHOULI's father in Israel in the 1960's when, in fact, both LEWIS and KHOULI knew that KHOULI acquired the Egyptian antiquities from other dealers.

13. As a further part of the smuggling scheme, KHOULI, ALSHDAIFAT and RAMADAN shipped, or caused to be shipped, Egyptian antiquities from the UAE to the United States using methods that were contrary to law and intended to avoid detection and scrutiny by Customs, including: (1) making false declarations to Customs about the country of origin and value of Egyptian antiquities; (2) using vague and misleading descriptions on shipping labels and Customs paperwork, such as "antiques," "wood panels" and

5

"wooden painted box," instead of declaring that the shipments contained protected antiquities; (3) splitting a single antiquity into separate packages that were shipped individually over the course of several weeks to conceal the size and value of the fully-assembled antiquity; (4) shipping packages to a third party in the United States who then claimed the packages and forwarded them to KHOULI upon receipt, and making false declarations stating that the third party was the consignee or purchaser of the shipments ("transshipping"); (5) failing to file entry or informal entry documents with Customs for packages shipped by post; and (6) hiding Egyptian antiquities within a container of furniture shipped to the United States by another UAE dealer and making false statements about the seller and country of origin of the items in the container.

## COUNT ONE
(Conspiracy to Smuggle)

14. The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between October 2008 and November 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOUSA KHOULI, also known as "Morris Khouli," SALEM ALSHDAIFAT, JOSEPH A. LEWIS II and AYMAN RAMADAN, together with others, did knowingly and willfully conspire to: (a) with intent to defraud

the United States, smuggle and clandestinely introduce and attempt to smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, and make out and pass and attempt to pass through a customhouse false, forged and fraudulent invoices, and other documents and papers; and (b) fraudulently import and bring into the United States merchandise contrary to law, and receive, conceal, buy, sell and facilitate the transportation, concealment and sale of such merchandise after importation, knowing such merchandise to have been imported and brought into the United States contrary to law, all contrary to Section 545 of Title 18 of the United States Code.

16. In furtherance of the conspiracy, and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants MOUSA KHOULI, SALEM ALSHDAIFAT, JOSEPH A. LEWIS II and AYMAN RAMADAN committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about October 30, 2008, KHOULI wired $10,000 from his New York bank account to RAMADAN's bank account in Dubai, UAE.

b. On or about November 16, 2008, RAMADAN caused a Greco-Roman style Egyptian sarcophagus to be shipped by air from the UAE to John F. Kennedy International Airport ("JFK").

7

c.  On or about April 3, 2009, ALSHDAIFAT directed KHOULI to wire $20,000 to RAMADAN's bank account in Dubai, UAE.

d.  On or about May 13, 2009, RAMADAN sent to KHOULI and ALSHDAIFAT an airwaybill showing that a package described as a "wooden panel" was being shipped by NEST from Dubai, UAE to a third party consignee via JFK.

e.  On or about April 13, 2009, LEWIS wired $150,000 to KHOULI's bank account in London, England.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Money Laundering Conspiracy)

17.  The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

18.  In or about and between October 2008 and November 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOUSA KHOULI, also known as "Morris Khouli," SALEM ALSHDAIFAT, JOSEPH A. LEWIS II and AYMAN RAMADAN did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through one or more places outside the United States, to wit: the United Arab Emirates and the United Kingdom, with the intent to promote the

carrying on of specified unlawful activity, to wit: the smuggling of goods in violation of Title 18, United States Code, Section 545, contrary to Title 18, United States Code, Sections 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNTS THREE THROUGH SEVEN
(Smuggling Goods into the United States and Fraudulent Importation and Transportation of Goods)

19. The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between October 2008 and November 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOUSA KHOULI, also known as "Morris Khouli," SALEM ALSHDAIFAT, JOSEPH A. LEWIS II and AYMAN RAMADAN, together with others, (a) did knowingly, willfully and with intent to defraud the United States smuggle and clandestinely introduce and attempt to smuggle and clandestinely introduce into the United States merchandise which should have been invoiced, to wit: Egyptian antiquities, and did make out and pass and attempt to pass through a customhouse false, forged and fraudulent invoices, and other documents and papers, and (b) did knowingly, intentionally and fraudulently import and bring into the United States merchandise, to wit:

9

Egyptian antiquities, contrary to law, and did receive, conceal, buy, sell and facilitate the transportation of such merchandise after importation, knowing such merchandise to have been imported and brought into the United States contrary to law, as set forth below:

| Count | Defendants | Approx. Arrival Date(s) | Method of Shipment | Description |
|---|---|---|---|---|
| 3 | KHOULI RAMADAN | 11/20/2008 | Air cargo | Greco-Roman style Egyptian coffin |
| 4 | KHOULI ALSHDAIFAT LEWIS RAMADAN | 4/21/2009 through 5/9/2009 | International mail | Inner coffin of nesting Egyptian coffin set (shipped in pieces) |
| 5 | KHOULI RAMADAN ALSHDAIFAT | 5/12/2009 | International mail | Egyptian funerary boats and limestone figures |
| 6 | KHOULI LEWIS RAMADAN ALSHDAIFAT | 5/14/2009 | Air cargo | Part of outer lid of nesting Egyptian coffin set |
| 7 | KHOULI LEWIS | 9/23/2009 | Sea cargo | Middle coffin and part of outer lid of nesting Egyptian coffin set |

(Title 18, United States Code, Sections 545, 2 and 3551 et seq.)

## COUNT EIGHT
(False Statement)

21.  The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

22. On or about February 10, 2009, within the Eastern District of New York and elsewhere, the defendant MOUSA KHOULI, also known as "Morris Khouli," knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the United States Immigration and Customs Enforcement ("ICE"), an agency of the executive branch of the Government of the United States, in that KHOULI showed an ICE Special Agent painted wood panels and stated that those panels were the contents of the shipment bearing customs entry number H67-1324607-1, when, in fact, as he then and there well knew, that shipment contained a Greco-Roman style Egyptian sarcophagus and not the painted wooden panels.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

COUNT NINE
(False Statement)

23. The allegations contained in paragraphs 1 through 13 are realleged and incorporated as if fully set forth in this paragraph.

24. On or about September 8, 2009, within the Eastern District of New York and elsewhere, the defendant MOUSA KHOULI, also known as "Morris Khouli," knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the United States Immigration and Customs Enforcement ("ICE"), an agency of

the executive branch of the Government of the United States, in that KHOULI stated to an ICE Special Agent that a coffin found at his residence was part of his father's collection and that he had owned it for a long time, when, in fact, as he then and there well knew, he had purchased the coffin from defendant AYMAN RAMADAN in April 2009.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE
AND COUNTS THREE THROUGH SEVEN
(Conspiracy to Smuggle, Smuggling Goods into the United States, Fraudulent Importation and Transportation of Goods)

25.   The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One and Three through Seven, the United States will seek forfeiture in accordance with Title 18, United States Code, Sections 545 and 982(a)(2)(B), of merchandise introduced into the United States in violation of Section 545, or the value thereof, and/or any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

a.   a money judgment in U.S. currency for which the defendants are jointly and severally liable;

b.   any and all right, title and interest in a set of three nesting Egyptian wood sarcophagi, bearing the name

"Shesepamutayesher" and the title "Lady of the House," circa 664-111 B.C., including:

   (1) one Egyptian wood inner sarcophagus seized on or about September 8, 2009 from KHOULI;

   (2) one Egyptian wood inner sarcophagus and outer sarcophagus lid seized on or about November 4, 2009 at the Port of Newark, New Jersey;

   (3) four Egyptian wood panels and posts constituting the bottom of the outer sarcophagus; and

   (4) four Egyptian wood birds on the top of the outer sarcophagus lid;

  c. any and all right, title and interest in two wood horses and multiple pieces of wood furniture seized on or about November 4, 2009 at the Port of Newark, New Jersey;

  d. any and all right, title and interest in one Greco-Roman style Egyptian sarcophagus;

  e. any and all right, title and interest in a set of Egyptian boats and limestone figures; and

  f. approximately $80,488.99 seized on or about September 8, 2009 from JP Morgan Chase Bank Account No. xxx4855, held in the name of or for the benefit of Windsor, and all proceeds traceable thereto.

  26. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation,

(Title 18, United States Code, Sections 545 and 982(a)(2)(B); Title 21, United States Code, Section 853(p)).

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO
(Money Laundering Conspiracy)

27.  The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Two, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit all property involved in a violation of Title 18, United States Code,

Section 1956(h), or any property traceable to such property including but not limited to the following:

    a. a money judgment in U.S. currency for which the defendants are jointly and severally liable;

    b. any and all right, title and interest in a set of three nesting Egyptian wood sarcophagi, bearing the name "Shesepamutayesher" and the title "Lady of the House," circa 664-111 B.C., including:

    (1) one Egyptian wood inner sarcophagus seized on or about September 8, 2009 from KHOULI;

    (2) one Egyptian wood inner sarcophagus and outer sarcophagus lid seized on or about November 4, 2009 at the Port of Newark, New Jersey;

    (3) four Egyptian wood panels and posts constituting the bottom of the outer sarcophagus; and

    (4) four Egyptian wood birds on the top of the outer sarcophagus lid;

    c. any and all right, title and interest in two wood horses and multiple pieces of wood furniture seized on or about November 4, 2009 at the Port of Newark, New Jersey;

    d. any and all right, title and interest in one Greco-Roman style Egyptian sarcophagus;

    e. any and all right, title and interest in a set of Egyptian boats and limestone figures; and

    f. approximately $80,488.99 seized on or about September 8, 2009 from JP Morgan Chase Bank Account No. xxx4855, held in the name of or for the benefit of Windsor, and all proceeds traceable thereto.

   28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

16

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code, Section 853(p)).

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2009R00637
FORM DBD-34
JUN 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

MOUSA KHOULI, *also known as* "*Morris Khouli,*" *SALEM ALSHDAIFAT, JOSEPH A. LEWIS II and AYMAN RAMADAN,*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 545, 982(a)(1), 982(a)(2)(B), 1001(a)(2), 1956(h), 2 and 3551 *et seq.*; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* ___

_____
*Clerk*

*Bail, $* _____

*Karin Orenstein, Assistant U.S. Attorney (718) 254-6188*